Charles E. DICKEY, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18689.

United States Court of Appeals
Ninth Circuit.

June 1, 1964.

Rehearing Denied July 8, 1964.

Donald C. Duchow, San Francisco, Cal., D. Wendell Reid, Van Nuys, Cal., for appellant.

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before HAMLEY, KOELSCH and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge.

Charles E. Dickey appeals from his conviction, on a jury verdict, of concealing and facilitating the concealment of narcotic drugs in violation of section 2(c) of the Narcotic Drugs Import and Export Act, as amended, 70 Stat. 570, 21 U.S.C. § 174 (1958).

Dickey contends that the trial court erred in receiving an exhibit in evidence, and in failing to instruct the jury with reference to the inferences to be drawn from a claim of the privilege against self incrimination made by a witness called by Dickey.

The Government has moved to dismiss the appeal on the ground that it was not

taken within the time required by Rule 37(a) (2), Federal Rules of Criminal Procedure. It is therein provided that an appeal may be taken within ten days after entry of the judgment or order appealed from but if a motion for a new trial or in arrest of judgment has been made " * * * within the 10-day period * * * " an appeal from a judgment of conviction may be taken within ten days after entry of the order denying the motion.

No notice of appeal was filed within ten days after entry of the judgment of conviction on March 22, 1963. However, on the tenth day, i. e., April 1, 1963, Dickey filed what is conceded to be a motion for a new trial. This motion was denied on April 5, 1963, and the notice of appeal was filed on the same day. Thus, looking only to Rule 37(a) (2), it would appear that the appeal was timely.

But Rule 33, Federal Rules of Criminal Procedure, provides that a motion for a new trial based on any grounds other than that of newly-discovered evidence shall be made within five days after verdict or finding of guilty or within such further time as the court may fix during the five-day period.[1] The motion for new trial made on April 1, 1963, was not on the ground of newly-discovered evidence, it was made more than five days after entry of the jury verdict, and the district court did not, during that five-day period, extend the time for making the motion.

Pointing to these circumstances, the Government contends that, notwithstanding the ten-day period for filing such a motion, apparently provided for in Rule 37(a) (2), Dickey's motion for a new trial was not timely under Rule 33, and therefore did not extend the time for taking an appeal.

The circuits are divided on this question. The Tenth Circuit holds that when the question is the timeliness of the appeal the ten-day period specified in Rule 37(a) (2) governs, notwithstanding the five-day provision of Rules 33 and 34. See Lujan v. United States, 10 Cir., 204 F.2d 171. All of the other circuits which have dealt with the problem, including the Ninth, hold that the five-day limit of Rules 33 and 34 governs.[2] One of the Fifth Circuit decisions so holding was reviewed by the Supreme Court in Lott v. United States, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940. But while the Supreme Court reversed the court of appeals, it did so on a different ground and did not reach the question under discussion.[3]

We need not reëxamine the position the Ninth Circuit has taken on this question for, assuming that the motion for a new trial, filed by Dickey on April 1, 1963,

---

1. Rule 34, Federal Rules of Criminal Procedure, providing for motions in arrest of judgment, contains a similar five-day time limit, with a like provision for an extension.

2. Ninth Circuit: Drown v. United States, 9 Cir., 198 F.2d 999; Pugh v. United States, 9 Cir., 197 F.2d 509; Marion v. United States, 9 Cir., 171 F.2d 185.
   Other Circuits: Kirksey v. United States, 94 U.S.App.D.C. 393, 219 F.2d 499; United States v. Bertone, 3 Cir., 249 F.2d 156; Fallen v. United States, 5 Cir., 306 F.2d 697, cert. granted 374 U.S. 826, 83 S.Ct. 1882, 10 L.Ed.2d 1050; Lott v. United States, 5 Cir., 280 F.2d 24, rev'd on other grounds, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940; Godwin v. United States, 8 Cir., 185 F.2d 411.

3. Nevertheless the Supreme Court, 367 U.S. at page 425, 81 S.Ct. at page 1563, characterized the variance between the rules as presenting an " * * * obscurity, if not inconsistency * * * " and expressed the hope that it would be resolved by the rule-making process. The Advisory Committee on Appellate Rules appointed by the Chief Justice under the program for the study of procedural rules, in its March, 1964 preliminary draft of proposed Uniform Rules of Federal Appellate Procedure, has proposed a Rule 4(d) which would resolve the problem by making the time provisions of Rules 33 and 34 govern. An exception would be made in the case of a motion for a new trial on the ground of newly-discovered evidence, as to which there is a two-year limit under present Rule 33, proposed Rule 4(d) providing that such a motion would have to be made within ten days after entry of the judgment in order to extend the time for taking an appeal. See, 1964 U.S.Code Cong. and Adm. News, at p. 750.

standing alone, did not have the effect of extending beyond that date the time for taking an appeal as prescribed in Rule 37(a) (2), there is another circumstance, now to be discussed, which leads us to believe that this appeal is timely.

Prior to filing his April 1, 1963 motion for a new trial, Dickey, on March 27, 1963, filed a paper denominated "Notice of Motion for New Trial." He therein gave notice that, on April 5, 1963, he would make a motion for a new trial, which motion would be based upon the notice, all other papers and documents theretofore submitted, and papers, documents, affidavits and other evidence to be thereafter submitted. This notice was filed on the fifth day after the entry of the verdict of guilty. Therefore, if regarded as a motion for a new trial, it was timely under Rule 33 and therefore, under Rule 37(a) (2), served to extend the time for taking an appeal until ten days after entry of the order denying the motion.

The Government, however, takes the position that this notice, filed on March 27, 1963, cannot be regarded as a motion for a new trial. It urges that there is a clear distinction between a written motion and a notice of hearing of such a motion, pointing to language in Rule 45(d), Federal Rules of Criminal Procedure, where reference is made to both motions and notices. Moreover, the Government contends, the notice cannot be regarded as a motion for a new trial because it does not, as required by Rule 47, Federal Rules of Criminal Procedure, contain a statement of the grounds upon which it was made.[4] In support of this proposition, the Government cites United States v. McCurry, E.D.Pa., 146 F.Supp. 109,

111, aff'd on other grounds, 3 Cir., 248 F. 2d 116.[5]

If the problem before us were that of determining whether a document filed within the ten-day period prescribed by Rule 37(a) (2) was a notice of appeal, the past decisions of this court indicate that, in the interests of saving the appeal, we would be most liberal in finding any document filed to constitute such a notice. See Yanow v. Weyerhaeuser Steamship Co., 9 Cir., 274 F.2d 274, 282, and the examples there given of informally drawn papers or improperly labeled documents which have been accepted as a notice of appeal.

The real issue here is essentially the same. The question before us is not whether the "Notice of Motion for New Trial" was inadequate to enable the district court to act thereon as a motion for a new trial, but whether it can be regarded as such a motion for the purpose of saving the appeal. The district court took no action on the notice of March 27, 1963, and while it denied the motion for a new trial filed on April 1, 1963, that action is not before us for review. Thus the insufficiency of the notice is not presented as a reason why the district court should be sustained in denying it, but only as a means of preventing an appeal from the judgment of conviction.

Considered in this context, we see no reason why the sufficiency of the "Notice of Motion for New Trial" should not be regarded with as much latitude as we would regard informally drawn or improperly labeled notices of appeal. In fact, considering the ambiguity created by the apparent inconsistency between Rules 33 and 34 on the one hand, and

---

4. Rule 47 provides that a motion " * * * shall state the grounds upon which it is made * * *." To be compared, is Rule 7(b) (1), Federal Rules of Civil Procedure, which provides that a motion " * * * shall state with particularity the grounds therefor * * *." See also, Form 23, "Motion for New Trial," appendix of forms attached to Federal Rules of Criminal Procedure, which form, however, is intended to be illustrative and not mandatory. See Rule 58, Federal Rules of Criminal Procedure.

5. In McCurry, 146 F.Supp. at page 111, the court cited Pugh v. United States, 9 Cir., 197 F.2d 509, as authority for the court's holding. However, we do not believe that Pugh is in point on the question since in that case no motion for a new trial in any form, and no motion to extend the time for making such a motion, was made within five days after the finding of guilty.

Rule 37(a) (2) on the other, as pointed out above, there seems to be a special reason for a generous attitude in appraising, for this particular purpose, the sufficiency, as a motion for a new trial, of any document filed within five days of entry of the judgment.

■ We therefore conclude that the "Notice of Motion for New Trial," filed on March 27, 1963, should be regarded as a motion for a new trial for the purposes of Rule 37(a)(2) and that, so regarded, the time for taking an appeal was extended as provided in that rule. It follows that the notice of appeal, filed on the day the motion for a new trial was denied, was timely under Rule 37(a) (2). Accordingly the motion to dismiss the appeal is denied.

The exhibit which, according to Dickey, was erroneously admitted is a package containing 105 grams of heroin. This exhibit was inadmissible, appellant contends, because it was obtained as a result of an unreasonable search and seizure. The search and seizure were invalid, he argues, because not made pursuant to a search warrant or incident to a lawful arrest. The arrest was unlawful, Dickey asserts, because:

> "Use by the federal officers of stealth, subterfuge, and force to gain entry into Appellant Dickey's hotel room together with the officer's [sic] failure to comply with the requirements of 18 U.S.C. 3109 violated the Appellant's constitutional right against unreasonable searches and seizures." [6]

Dickey's counsel had objected in the trial court to the admission of this evidence, contending there as he does here, that the arrest incident to which the seizure was made was not valid. But the reasons relied upon in the trial court for asserting that the arrest was unlawful were entirely different from those advanced on this appeal. Instead of arguing, as he now does, that the arrest was invalid because of the manner in which Dickey's room was entered, he contended in the trial court that the officers did not have "probable cause" or "reasonable grounds" to make the arrest without a warrant.[7]

Pointing to this disparity of reasons, the Government argues that Dickey should not be permitted to advance here, for the first time, grounds for objection which were not voiced in the trial court. Counsel for Dickey, on the other hand, asks us to consider the new grounds under the "plain error" rule, Rule 52(b), Federal Rules of Criminal Procedure.[8]

In Billeci v. United States, 9 Cir., 290 F.2d 628, 629, where no trial court objection had been made to the introduction of the evidence, and no motion to suppress had been made under Rule 41(e), this court based its conclusion that the search and seizure did not involve "plain error" on the view that the reception of evidence obtained as the result of an unreasonable search and seizure is not the kind of error which could seriously affect the "fairness, integrity or public reputation of judicial proceedings," to use the language of United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555. This disposition of the "plain error" question did not involve any consideration of the lawfulness of the search and seizure.

---

6. 18 U.S.C. § 3109 (1958) reads:
   "§ 3109. Breaking doors or windows for entry or exit.
   "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

7. The terms "probable cause" for purposes of the Fourth Amendment and "reasonable grounds" as used in 70 Stat. 570, 26 U.S.C. § 7607 (1958) means substantially the same. Wong Sun v. United States, 371 U.S. 471, 478, 83 S.Ct. 407, 9 L.Ed. 2d 441, n. 6.

8. Rule 52(b) reads:
   "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

But, in the later case of Sanchez v. United States, 9 Cir., 311 F.2d 327, 330, this court, while citing the Billeci decision, based its conclusion that the search and seizure did not involve "plain error" upon a consideration of the lawfulness of the search and seizure, it being held that " * * * there was no error, let alone one affecting the substantial rights of appellant * * *." in admitting the marihuana and marked money into evidence.

In determining whether there was "plain error" in receiving the exhibit in the case now before us, we will, as was done in Sanchez, examine the lawfulness of the seizure in question.

We first state the circumstances under which the package was seized. Having obtained information from Thomas Lacey, an informant, that Dickey was in a room at the Whitcomb Hotel, in San Francisco, ready to sell narcotic drugs to Lacey, Agents Ira C. Feldman, William R. Thomas and Vester E. Tyler, placed themselves in front of the door of that room. They had neither a search warrant nor a warrant of arrest. Thomas inserted into the lock of Dickey's door a key which had been obtained from the hotel management. Just as Thomas was about to turn the key, Dickey, apparently hearing a noise at the door, asked from the inside, "Who's there?" Thomas, disguising his voice, said, "It's Lacey; open up." Dickey opened the door and was seen by the agents to have in his hand a package wrapped in a napkin or Kleenex.

Dickey tossed the package to a lady behind him who turned out to be Mrs. Dickey, and she moved towards the bathroom. The agents entered the room without invitation and the package was recovered from Mrs. Dickey. It was opened and was found to contain 105 grams of heroin. Mr. and Mrs. Dickey were then arrested and, immediately afterwards, Feldman identified himself and his brother officers as agents of the Federal Bureau of Narcotics.

None of the agents knew until the package was opened that it contained narcotic drugs, but Feldman testified that he "had a good idea" it was narcotics. The testimony is inconclusive as to whether any agent entered the room before Dickey was seen to toss the package to his wife, and the trial court made no formal or informal finding as to this.[9]

While 18 U.S.C. § 3109 expressly relates to the circumstances under which an officer may break into a house to execute a search warrant, it has been held that the lawfulness of an officer's entry to arrest without a warrant " * * * must be tested by criteria identical with those embodied in 18 U.S.C. § 3109 * * *." Miller v. United States, 357 U.S. 301, 306, 78 S.Ct. 1190, 2 L.Ed.2d 1332.

Had entry into Dickey's hotel room been gained by the use of the pass key, this would have been a "breaking" of the door within the meaning of section 3109. Munoz v. United States, 9 Cir., 325 F.2d 23. But entry was not gained by that means and the noise made when the key was inserted into the lock had no more significance than a knock at the door.

Had the officers obtained, by ruse, a partial opening of Dickey's door, and if they had then forced open the door the rest of the way to gain entrance, this would have been a "breaking" in the

---

9. Thomas was the first to enter the room and while he testified that he saw Dickey throw the package to his wife, he did not state whether this was before or after he moved into the room. Feldman, who had been standing farther from the door than Thomas or Tyler, and who was the last to enter, saw Dickey toss the the package before he entered the room. But he did not state whether Thomas had entered before or after this action by Dickey. Tyler testified that " * * *

(a)s soon as the door was opened, Agent Thomas and myself pushed on into the room, and at this time Dickey had—had in his possession narcotics—" Further examination indicated that Tyler did not then know that the package contained narcotics. What he saw was "something" which was "wrapped up in what appeared to be a napkin." Tyler further testified that: "Immediately when we rushed into the room, he tossed it to his wife. She was waiting across the room."

sense of section 3109. Gatewood v. United States, 93 U.S.App.D.C. 226, 209 F.2d 789, 790.[10] But the employment of a ruse to obtain the full opening of the Dickeys' door unassociated with force, was not a "breaking." Leahy v. United States, 9 Cir., 272 F.2d 487. And since the door was then wide open, the subsequent entry into Dickey's room for the purpose of arresting him did not involve a "breaking" of the door. Leahy v. United States, supra.[11]

█ It is true that the officers seized the narcotics before effectuating the arrest. This was because exigent circumstances arose which made this course necessary in order to preserve the evidence.[12] The officers already had probable cause to make the arrest and since it was made immediately after the seizure the latter was substantially contemporaneous with the valid arrest.[13] In view of these considerations it is immaterial whether any officer entered the apartment before Dickey was seen to throw the package to his wife.

We therefore hold that there was no "breaking" within the meaning of section 3109, and hence no necessity for the officers to notify Dickey of their authority and purpose before entering the apartment. Nor was there, apart from the criteria of section 3109, any circumstance in connection with the arrest which rendered the same unlawful. The narcotics were lawfully seized as an incident of that arrest and the trial court did not commit "plain error" or any error in receiving that exhibit in evidence.

█ Dickey's remaining specification is that the trial court erred in failing, on its own motion, to instruct the jury that no inference as to Dickey's guilt was to be drawn from the fact that Lacey, called as a witness by Dickey, claimed the privilege against self-incrimination, which claim had been upheld by the trial court.

Lacey was subpoenaed by the Government and was made available to the defendant. Dickey's counsel stated that he wanted to talk to Lacey before calling him as a witness for the defendant. In this court it is asserted by Dickey that the Government "presumably knew" Lacey would claim the privilege, but that the record fails to disclose that any effort was made by the federal prosecutor to warn the court or Dickey's counsel of this "prejudicial situation."

It is provided in Rule 30, Federal Rules of Criminal Procedure, that no party may assign as error any omission from the charge to the jury unless he objects thereto before the jury retires to consider its verdict. Counsel for Dickey offered no instruction of the kind now suggested, nor did he object to the failure to give such an instruction. In fact, at the time Lacey claimed and was granted the privilege against self-incrimination, Dickey's counsel seemed unperturbed by Lacey's actions and the court's rulings.

It follows that we may not now reverse on this ground unless, in the exercise of our discretion, we regard it as involving "plain error" within the meaning of Rule 52(b).

10. See also, Miller v. United States, 357 U.S. 301, 313, 78 S.Ct. 1190, where, however, the opening of the door was perhaps not obtained by ruse.

11. In Leahy the officers had in their possession a valid warrant of arrest, whereas the officers in the case now before us had no warrant of arrest. But Dickey does not, on this appeal, argue that the officers did not have probable cause to make the arrest. It follows that, even without a warrant of arrest, the arrest of Dickey was valid if the entry was lawful.

12. Under some circumstances exigent circumstances may possibly justify even a "breaking" without first announcing authority and purpose. See Ker v. California, 374 U.S. 23, at 40, 83 S.Ct. 1623, 10 L.Ed.2d 726, n. 11; Miller v. United States, 357 U.S. 301, 309, 78 S.Ct. 1190.

13. A search and seizure can be incident to a valid arrest, and therefore lawful despite the lack of a search warrant (see Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623), only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. Stoner v. California, 84 S.Ct. 889; Collins v. Klinger, 9 Cir., 332 F.2d 54.

There is nothing in the record to indicate that the Government had prior knowledge that Lacey would claim the privilege. Nor is there anything therein to indicate that Dickey's counsel did not have, or could not have obtained, that information before calling Lacey. Moreover, we see no compelling reason to believe that the now-suggested instruction which has no support in the decided cases, would have benefited Dickey. More than likely the failure to suggest such an instruction at the trial manifests a choice of trial strategies on the part of Dickey's counsel.

Accordingly we hold that failure to give the instruction in question did not constitute "plain error."

Judge Browning concurs in that portion of the opinion relating to 18 U.S.C. § 3109 on the ground that the decision of this court in Leahy v. United States, 272 F.2d 487, cannot be fairly distinguished, and binds this panel.

The judgment is affirmed.