STATE of Missouri, Plaintiff-Respondent,

v.

Horace WILLIAMS, Defendant-Appellant.

No. 36712.

Missouri Court of Appeals,
St. Louis District,
Division Three.

May 4, 1976.

Motion for Rehearing or Transfer
Denied June 15, 1976.

Application to Transfer Denied
Sept. 13, 1976.

Joseph W. Warzycki, James C. Jones, Asst. Public Defenders, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard G. Callahan, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

GUNN, Judge.

Defendant-appellant was charged on two counts of felonious possession of Schedule One Controlled Substances in violation of § 195.020 RSMo Supp.1971. Count I charged possession of heroin, and Count II charged possession of marihuana. Prior to trial defendant filed a motion to quash a search warrant and suppress evidence seized thereunder, which, after hearing, was denied. Defendant's motion to sever the two offenses—the separate marihuana and heroin counts—was granted, and he was tried on the heroin count before a jury, found guilty and sentenced under the Second Offender Act to twelve years imprisonment. We affirm the judgment.

On appeal defendant argues that the trial court erred in denying his motion to suppress the evidence seized, alleging that the police entered his apartment without giving notice of their authority and purpose and thereby violated his guarantee against unreasonable searches and seizures under the Fourth Amendment to the United States Constitution. The defendant also contends that the trial court erred in allowing testimony that a quantity of marihuana and narcotics paraphernalia were seized at the time of defendant's arrest, as such testimony and items were evidence of a crime

other than that for which defendant was on trial.

St. Louis police received information from an informant that defendant was dealing in narcotics from his St. Louis apartment, and a search warrant for the apartment was obtained. On the night of defendant's arrest, undercover police officer Anton Wagner, with the search warrant in his possession, knocked at the door of defendant's apartment planning to venture alone into defendant's lair. Companion police officers stayed concealed from view in the distance outside the apartment building. The defendant's wife answered Officer Wagner's knock, and she asked whether Wagner was looking for her husband and was one of her husband's customers. Officer Wagner identified himself as a narcotics customer seeking to purchase some necessities from defendant. The defendant's wife admitted Officer Wagner to the apartment and led him down a darkened hallway to a back bedroom where he was met by defendant. Officer Wagner requested the defendant to sell him a $25 bag of heroin, and defendant agreed to the sale provided that Officer Wagner made use of the heroin on defendant's premises.[1] On being denied his request to take the heroin with him, Officer Wagner displayed his badge and for the first time identified himself as a police officer, giving the defendant the search warrant. He then arrested defendant and his wife. Officer Wagner used defendant's telephone to notify his police station of the arrest. The officers waiting outside the apartment building were then called from the police station. The defendant's mother, who had emerged from her bedroom, was asked by Officer Wagner to open the side door to the apartment to allow entry of other police officers. She complied with the request, and other officers entered the apartment for a search. A search of the defendant's bedroom revealed three one pound bricks of marihuana on a table. The top of defendant's dresser held quantities of heroin in foil packets, some syringes and a smoking pipe used for and containing marihuana. The foregoing items were seized and introduced into evidence with defendant's counsel specifically objecting to the introduction of the bricks of marihuana and the smoking pipe.

Although defendant does not contend on appeal that the search warrant possessed by Officer Wagner was issued without probable cause, he does contend that the procedure employed in its execution rendered the search constitutionally impermissible. It is appellant's contention that because the police officer did not give notice of his authority and purpose before entering the premises to be searched, appellant's right to be free from unreasonable search and seizure was violated, and all evidence seized in the search was inadmissible at trial. In support of his position, appellant relies primarily on *Miller v. United States,* 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958). Appellant's reliance on this decision, however, is misplaced. In *Miller,* police officers went to the defendant's apartment and knocked at his door. The defendant partially opened the door secured by a chain lock, asked what the police officers were doing there, and then closed the door immediately. The police officers responded by breaking open defendant's door, ripping the chain lock from the wall. Although they had no search or arrest warrant and at no time stated the purpose of their presence, the officers entered and searched defendant's apartment. The Supreme Court held it to be unlawful for police officers to break open a door to arrest the occupant for a felony where the officers, prior to entry, failed to state their "authority and purpose" for demanding admission.

■ But in the present case, we are presented with a significantly less offensive factual situation. Unlike the entry in *Miller,* the police here employed no violence or any threat of violence to gain entry into

---

1. In the vernacular of the parties: Officer Wagner asked defendant, "Can you do me a quarter?" Defendant responded: "I'll do you the quarter but you are going to have to do it here." When Officer Wagner indicated he wanted his order to go, defendant's wife, who was nearby, stated: "You are going to have to hit it here, nothing walks from here."

defendant's premises. On the contrary, appellant's wife, believing the undercover police officer to be one of her husband's "customers," actually invited him in and directed him to the room where the contested evidence was seized. Furthermore, the police officer entered with a valid search warrant for the premises. Because the entry was by invitation and without force, the *Miller* requirement for announcement of "authority and purpose" does not apply, and the validity of the search warrant was unimpaired by the manner of its execution.

■ The result we reach is consonant with our common law traditions, as well as Missouri law. At common law there has been a long-standing distinction between entries where force is applied and those obtained by ruse or deception, but without force. See *Miller v. United States,* supra; *United States v. Beale,* 445 F.2d 977 (5th Cir. 1971), cert. den., 404 U.S. 1026, 92 S.Ct. 697, 30 L.Ed.2d 676 (1972). Only in the former case is there a requirement of notice of authority and purpose before entry may be effected. Where ruse, deception or subterfuge are used to gain entrance to execute a warrant the federal courts have consistently held such conduct to be immaterial to the validity of the warrant so long as such misrepresentation is not accompanied by force. *United States v. Beale,* supra; *United States v. Syler,* 430 F.2d 68 (7th Cir. 1970); *Dickey v. United States,* 332 F.2d 773 (9th Cir. 1964), cert. den., 379 U.S. 948, 85 S.Ct. 444, 13 L.Ed.2d 545 (1965); *Leahy v. United States,* 272 F.2d 487 (9th Cir. 1959), cert. dismissed, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459 (1961).[2] As the Supreme Court noted in *Sherman v. United States,* 356 U.S. 369, 372, 78 S.Ct. 819, 820–821, 2 L.Ed.2d 848, 851 (1958): "Criminal activity is such that stealth and strategy are necessary weapons in the arsenal of the police officer." Missouri statutes governing the execution of arrest and search warrants have implicitly followed the distinction

which we have here noted. Before he may "break open" doors in order to execute a warrant, a police officer is required to make a "public demand and announcement of his official character." § 105.240 RSMo 1969. The statute imposes no such requirement where no breaking is necessary to execute the warrant. Nor is any such requirement found in Supreme Court Rule 33.02 V.A.M.R., which details the procedure for the execution of search warrants.

Considering the federal cases which have approved the use of deceptive strategy to gain access to premises for the purpose of enforcing search and arrest warrants, certainly, under the circumstances of this case there was no infringement of defendant's constitutional guarantee against unreasonable search and seizures by the means of entry utilized by Officer Wagner to enter defendant's apartment. The evidence in the case before us shows conclusively that no force was employed by Officer Wagner to gain entrance to defendant's premises. He was invited inside the premises. The search warrant was not rendered invalid because Officer Wagner did not identify himself as a police officer before he entered to execute the warrant.

Defendant's second assertion of error relates to the admission of evidence regarding the marihuana and marihuana paraphernalia (the pipe), which defendant contends was erroneously prejudicial as being evidence of a crime other than that for which defendant was being tried.

■ The general principle is well-established that evidence of commission of separate and distinct offenses is not admissible unless it has a legitimate tendency to directly establish the defendant's guilt of the crime for which he is being tried. Evidence of unrelated crimes is inadmissible, because it violates defendant's right to be tried for the crime for which he is charged. *State v. Granberry,* 530 S.W.2d 714 (Mo.App.1975);

**2.** In *United States v. Syler,* supra, federal agents used the ruse of a gas meter reader to gain entry to defendant's premises. In *Dickey v. United States,* supra, a law officer assumed a false identity to enter defendant's quarters. In

*Leahy v. United States,* supra, the guise of county tax assessor was the deception employed by law enforcement officers to gain entry to defendant's premises.

*State v. McElroy,* 518 S.W.2d 459 (Mo.App. 1975). "It has the misleading probative force of tending to prove one crime by proving another." *State v. Martin,* 506 S.W.2d 473, 474 (Mo.App.1974).

■ The general exclusionary rule, however, is not without exceptions. Evidence of other crimes is admissible to prove the specific crime charged when it tends to establish motive, intent, absence of mistake or accident, identity of the accused, or a common scheme embracing the commission of two or more crimes so interrelated that proof of one tends to establish the other. *State v. Granberry,* supra; *State v. Jackson,* 519 S.W.2d 551 (Mo.App.1975); *State v. McElroy,* supra.

In order to determine whether one of the exceptions to the general rule applies, the court must weigh "its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime." *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304, 307 (banc 1954). The difficulty in applying such a test to a given set of facts is readily apparent after an examination of the opposing briefs in the case sub judice. Both parties rely on substantially the same authorities to support their mutually exclusive conclusions.

■ The State contends the contested evidence was admissible under either the intent exception or as part of the res gestae,[3] arguing that the evidence relating to the possession of a large quantity of marihuana by the defendant clearly demonstrates that his possession of heroin was

knowing and that such evidence was admissible as part of the relevant facts surrounding the incident. The defendant, on the other hand, contends that the contested evidence was not logically relevant to the excepted purpose for which it was introduced, and therefore its admission was error.

■■ After a review of the relevant authority, we are convinced that the State's position is consistent with the case law. The State not only had the burden of proving that the heroin was in the defendant's possession, but it also had the burden of proving that such possession was knowing on his part. *State v. Wiley,* 522 S.W.2d 281 (Mo. banc 1975). In *State v. Tygart,* 531 S.W.2d 47 (Mo.App.1975), it was said l. c. 51:

> "The sufficiency of the proof necessary to sustain a conviction for actual or constructive possession of a proscribed controlled substance is tested by whether 'the defendant was aware of the presence *and character of the particular substance, and was intentionally and consciously in possession of it.'*" (original emphasis; cites omitted)

The court in *Tygart* found evidence of the separate crime of the sale of narcotics to be logically relevant to the charge against defendant of intentionally and knowingly possessing narcotics and an exception to the principle proscribing evidence of other crimes. The contested evidence here (the marihuana and marihuana pipe) is logically relevant to establish that the defendant's possession of the heroin was with full knowledge of its illegal character. Although proof of possession of marihuana is not ipso facto evidence of knowing possession of heroin, where the two controlled

---

**3.** A recognized exception to the rule relating to admission of evidence of other crimes is "where the circumstances are such as to constitute one continuous transaction in the accomplishment of a common design and the crimes are concurrent so that the proof of one cannot be made without a showing of the facts tending to establish the other, the entire facts may be admissible since they are regarded as part of the 'res gestae . . . .'" *State v.*

*Cox,* 508 S.W.2d 716, 723 (Mo.App.1974). When evidence of another crime forms part of the res gestae or falls within one of the other aforementioned exceptions the State is not required to "sift and separate" the evidence in order to exclude testimony tending to prove the crime for which the defendant is not being tried. *State v. Sinovich,* 329 Mo. 909, 46 S.W.2d 877 (1931); *State v. Jackson,* supra.

substances and paraphernalia [4] for their use are found at the same time and in the same place in open view, it has a logical tendency to prove a material fact at issue, that is, the knowing possession. See *State v. Tygart,* supra. Under the facts of this case, the marihuana and the concomitant apparatus (the pipe) were admissible under the intent exception.

Our decision is not an anomaly or aberration, for the precise issue before us was decided in *State v. Tilcock,* 522 S.W.2d 60 (Mo.App.1975), and *State v. McClure,* 504 S.W.2d 664 (Mo.App.1974). In *Tilcock,* a case in which the defendant was charged with the sale of amphetamine sulfate (mini whites), the arresting undercover officer testified that during the course of the sale of the mini whites, the defendant had offered to sell a quantity of heroin ("smack"). The defendant argued that evidence of the "smack" sale was impermissible in the trial for the separate crime of the sale of the mini whites. The court rejected defendant's contention, holding that the evidence of the heroin sale had a direct bearing to show the intent of the defendant to sell the mini whites and was, therefore, within the exception to the interdiction of evidence of other crimes.

In *State v. McClure,* supra, the charge against defendant was the sale of LSD. At trial, the State presented evidence that when the defendant sold the LSD to an undercover police officer, he also made an effort to sell a quantity of marihuana. It was held that the marihuana evidence was logically relevant to prove the defendant's guilt for the sale of LSD.[5]

Thus, we find that the contested evidence possessed the requisite logical relevance to establish defendant's intent to possess heroin; the exclusion of such evidence was

therefore not necessary, although it incidentally presented evidence of another crime.

The judgment is affirmed.

SIMEONE, P. J., and RENDLEN, J., concur.

---

4. Certainly there is no question that paraphernalia suitable for utilizing the particular controlled substances of the charge—for instance, in a charge of heroin possession, evidence of the separate crime of possession of paraphernalia used for injecting the heroin—is admissible to establish knowing possession. *State v. Lee,* 521 S.W.2d 180 (Mo.App.1975); *State v. Taylor,* 508 S.W.2d 506 (Mo.App.1974).

5. See also: *State v. Randall,* 530 S.W.2d 407, 411 (Mo.App.1975), holding that in a hashish possession case, evidence of defendant's possession of marihuana and the equipment for processing it to hashish was " 'logically relevant' on the issue of the defendant's knowledge of the nature of the substance [hashish]."